IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE AMERICAN SOCIETY OF MEDIA PHOTOGRAPHERS, INC., GRAPHIC ARTISTS, GUILD, PICTURE ARCHIVE COUNCIL OF AMERICA, INC., NORTH AMERICAN NATURE PHOTOGRAPHY ASSOCIATION, PROFESSIONAL PHOTOGRAPHERS OF AMERICA, LEIF SKOOGFORS, AL SATTERWHITE, MORTON BEEBE, ED KASHI, JOHN SCHMELZER, SIMMS TABACK, LELAND BOBBE, JOHN FRANCIS FICARA, and DAVID W. MOSER, on Behalf of Themselves and Others Similarly Situated, | |
| Plaintiffs, | Case No. 13 C 408 |
| v. | Hon. Harry D. Leinenweber |
| GOOGLE, INC., | |
| Defendant. | |

MEMORANDUM OPINION AND ORDER

Before the Court is non-party Tribune Media Services, LLC's, Motion to Quash Subpoena. For the reasons stated herein, the Motion is granted.

I.  BACKGROUND

This matter is before the Court because a subpoena was issued by the U.S. District Court for the Northern District of Illinois to Tribune Media Services, LLC ("TMS"), a non-party in a civil case. That civil case is now pending in the Southern District of New

York.  *See American Soc. of Media Photographers, et al. v. Google, Inc.*, No. 10-CV-02977 (DC), (S.D.N.Y. 2010).

In *Google, Inc.*, book photographers, artists, and associations that represent book photographers (the "Plaintiffs") filed a class action suit against Google, Inc. ("Google") claiming copyright infringement.  Specifically, Plaintiffs allege Google infringed upon Plaintiffs' copyrighted works when Google entered into agreements with several major research libraries in 2004 to copy books and other writings digitally to develop a comprehensive online library.  Plaintiffs claim Google illegally copied illustrations from books and periodicals because Google failed to obtain copyright permission from the artists or photographers.  In response to the Complaint, Google has asserted the statutory defense of fair use.  The case is currently in discovery.

In December 2012, Plaintiffs issued a subpoena to TMS, a non-party in the underlying litigation.  TMS is a business involved in the compilation of television programming information and other related content.  It distributes and solicits its compilations to various print, online, and onscreen television entertainment guides and publications.  In conjunction with the editorial information TMS provides regarding the time a television show airs and the show's content, TMS also provides TV Showcards.  TV Showcards include photographs of a television show's cast and characters and a television show's logo and/or custom banner.

- 2 -

Plaintiffs subpoenaed TMS because they believe TMS is a licensing intermediary that publishes copyrighted information from television shows. Plaintiffs believe TMS's history and current licensing practices will provide evidence that a similar licensing scheme would have been created for the online book and periodical illustration market but for Google's misappropriation of Plaintiffs' images. Plaintiffs contend that to assert this argument they needs a plethora of information regarding TMS' business. Specifically, the subpoena demands information regarding:

1. TMS' business model;
2. TMS' annual revenues and profits
3. The types of materials TMS sells and/or licenses;
4. The types of licenses TMS sells;
5. TMS' pricing guides for its services and/or products;
6. The sources of the images sold and/or licensed by TMS;
7. TMS' selling and/or licensing of images, including, but not limited to the resolution of such images and the prices charged for their license and any contracts for products and/or services;
8. TMS' customers; and
9. The markets TMS' customers use its products.

*See* TMS' Mem. In Supp. of Mot. to Quash Subpoena, Ex. 1.

Immediately after receiving the subpoena, TMS objected to Plaintiff's demands. Pursuant to Federal Rule of Civil Procedure 37(a)(1), the parties conferred to attempt to resolve this issue without the Court's intervention. Those efforts,

however, proved futile and on January 17, 2013, TMS filed the pending Motion to Quash pursuant to Federal Rules of Civil Procedure 26(c) and 45(c)(3). In their Motion, TMS also seeks reasonably attorneys' fees and expenses pursuant to Federal Rules of Civil Procedure 26(c), 37(a)(4), and 45(c)(1).

## II. <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 45 governs subpoena. In relevant part it states:

> [o]n timely motion, the issuing court must quash or modify a subpoena that: (I) fails to allow a reasonable time to comply; (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed or regularly transacts business in person . . . ; (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden.

FED. R. CIV. P. 45(c)(A).

District courts have the discretion to grant, deny or modify a motion to quash a subpoena. *See Griffin v. Foley*, 542 F.3d 209, 223 (7th Cir. 2008). A party seeking to quash a subpoena bears the burden of demonstrating that the subpoena requires the disclosure of privileged information or subjects the party to an undue burden. *AF Holdings LLC v. Doe*, No. 12 C 4222, 2012 WL 5520861, *1 (N.D. Ill. Nov. 13, 2012). When analyzing whether a burden is "undue" the Seventh Circuit employs a relative hardship test. *See Northwestern Mem. Hosp. v. Ashcroft*, 362 F.3d 923, 927 (7th Cir. 2004). This test takes in account a number of factors including

- 4 -

whether (1) the party subpoenaed is a non-party in the underlying suit; (2) the information requested is relevant, (3) the party requesting the information has a substantial need for the documents; (4) the document request is overly broad; (5) the time period the request covers is reasonable; (6) the request is sufficiently particular; and (7) the request imposes a burden. *See Wi-Lan v. LG Electronics, Inc. et al.*, No. 10-CV-7721, 2011 WL 148058 at *2 (N.D. Ill. Jan. 18, 2011).

In determining whether material sought in a subpoena is relevant, Rule 26 instructs "[r]elevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1). In light of this instruction, "[r]elevancy has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). It is worth noting, however, that non-parties "are not treated exactly like parties in the discovery context, and the possibility of mere relevance may not be enough; rather, non-parties are entitled to somewhat greater protection." *Patterson v. Burge*, No. 03-C-4433, 2005 WL 43240 at *1 (N.D. Ill. Jan. 6, 2005).

### III. <u>DISCUSSION</u>

TMS argues Plaintiffs' subpoena should be quashed because it seeks irrelevant information and imposes an undue burden. Plaintiffs oppose these contentions and claim their need for the subpoenaed information outweighs the burden imposed on TMS.

#### A. Non-Party

It is undisputed that TMS is a non-party to this underlying litigation. As previously mentioned, this is one factor the Court considers in determining whether an alleged burden is undue in the relative hardship test. *See Wi-Lan*, 2011 WL 148058 at *2.

#### B. Relevance

Plaintiffs argue the information sought is relevant and necessary to rebut Google's fair use defense. Specifically, they claim the information is relevant to one of the four factors the courts examine when determining whether a party has shown a fair use defense to copyright infringement: the effect the alleged infringers use has upon the potential market value of the copyrighted work. *See* Pls.' Mem. of Law in Opp. to TMS' Mot. to Quash at 7; *see also, Game Workshop Ltd. v. Chapterhouse Studios, LLC*, No. 10-C-8103, 2013 WL 1340559 at *9 (N.D. Ill. Apr. 1, 2013).

In order to determine whether a party has affected the potential market, courts must consider the "extent of market harm caused by the particular actions of the alleged infringer," as well

as whether the unrestrained conduct of the defendant would "result in a substantially adverse impact on the potential market for the original." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994) (citations omitted).

Plaintiffs' believe that whenever a "new technology becomes sufficiently mainstream, a licensing intermediary arises to serve the new technology's need for copyright information." Pls.' Mem. of Law in Opp. to TMS' Mot. to Quash at 8. They contend TMS acts as a licensing intermediary in the television market. They claim the information sought in the subpoena will shed light on "how and when a licensing intermediary forms in response to new technology . . . and will provide evidence that a similar licensing scheme and market would have developed with respect to the online use of images" but for Google's usurping of the market, and misappropriation of Plaintiffs' images. *Id.* Plaintiffs state their intent to use TMS' products as an example to show a potential market for Plaintiffs' works.

TMS responds that it is not a licensing intermediary and does not license stand-alone images in connection with the TV Showcards or otherwise. TMS notes that "[t]o the extent photographs are included within the TV Showcards offering, those images depict cast and crew members for an associated program and are but one inseparable component of a larger editorial product." TMS' Reply Mem. in Supp. of Mot. to Quash Subpoena at 4.

Given these assertions, the Court fails to see how any information regarding TMS' business or its TV Showcards is relevant to the potential market for electronic images. TMS states it does not license stand-alone images and explains that despite Plaintiffs' beliefs, it is not a licensing intermediary in the television market. Thus, TMS avers it cannot provide information pertaining to a potential market for Plaintiffs' works because it is only a publisher and provider of entertainment information regarding television shows.

While Plaintiffs contend *Shields Enterprises v. First Chicago Corporation, et al.* supports their position, the Court finds Plaintiffs' reliance misplaced. In *Shields*, the district court denied a non-party's motion to quash because it found the information sought was relevant to the plaintiff's damages and undervaluation theory. *Shields Enterprises v. First Chicago Corporation, et al.*, No. 86-C-10213, 1988 WL 142200 at *4 (Dec. 28, 1988). In that case, the plaintiff was a former minority shareholder who alleged that defendants, former majority shareholders, coerced plaintiff to sell a company at a grossly undervalued price. *Id.* at *1. In *Shields*, the plaintiff subpoenaed non-party Auxon Computer Enterprises, a company engaged in the same business as the one plaintiff claimed it was coerced to sell at an undervalued price. In denying the motion to quash, the court found the information sought particularly relevant "in light

of the relatively few companies" in the market of the undervalued company.  *Id.* at *4.

The same cannot be said in this case.  The Court cannot fathom how documents pertaining to TMS' business model, customers, and annual profits are relevant to Plaintiff's claim that a viable market would have existed for their images but for Google's misappropriation of their images.  This is especially true given TMS' declaration that it is not a licensor of stand-alone images and does not act as a license intermediary.

In addition to this, TMS has provided the names of other organizations that are involved in the licensing of images or act as licensing intermediaries.  Thus, unlike the situation in *Shields*, here there are other companies that possess the relevant information Plaintiffs seek.

## C.  Plaintiffs' Need for the Documents Requested from TMS

Another factor to consider in the Seventh Circuit's relative hardship test is the party's need for the information sought.  In light of the Court's finding that the information Plaintiffs seek from TMS is at best only tangentially related to their claims in the underlying suit, the Court finds Plaintiffs have failed to demonstrate a substantial need for such documents.  This is particularly true given the fact TMS has provided Plaintiffs names of other business that could have information relevant to Plaintiffs' claims.  *See generally Automated Solutions, Corp. v.*

*Paragon Data Sys., Inc.*, 231 Fed. App'x 495, 497 (7th Cir. 2007) (affirming a district court's decision to quash a subpoena because the information sought was irrelevant and available elsewhere). Specifically, TMS points to The American Society of Composers, Authors and Publishers, ("ASCAP"), Broadcast Music, Inc. ("BMI"), Corbis, and JupiterImages as potential organizations engaged as licensing intermediaries or businesses that license stand-alone images or image collections. A quick internet search of the aforementioned organizations appear to confirm TMS' contentions, and cause the Court to find Plaintiffs' need for the documents from TMS minimal. *See id.*; *cf. Shields*, 1988 WL 142200 at *4 (denying a non-party's motion to quash where the information sought was relevant to plaintiff's damages and there were relatively few companies engaged in the business as the non-party opposing the subpoena).

### D.   Burden

TMS also argues the subpoena should be quashed because it imposes an undue burden. It contends that complying with the subpoena will require a significant amount of time, resources, and money and will require the disclosure of confidential information. Plaintiffs disagree, claiming the burden imposed is minimal since the subpoena only seeks specific information.

TMS relies on *Patterson v. Burge* as support. In *Patterson*, the court granted a non-party's motion to quash in part because the

- 10 -

subpoena imposed an undue burden. *Patterson v. Burge*, 2005 WL 43240 at *1. In making this finding, the court weighed the weak showing of materiality against the burden imposed on the non-party, (the Chicago Tribune Company), and the public's interest in a "robust press." *Id.* at *3-5. The court reasoned that if mere relevance was the only standard a party had to satisfy in order to compel the production of materials from non-parties, then companies like the non-party would be "very busy responding to civil subpoenas." *Id.* at *3.

In this case, the public's interest is not at issue in the same way it was in *Patterson*. Instead, *Patterson* is instructive because the Court has determined the information Plaintiffs demand is only tangentially (if at all) relevant to Plaintiffs' claims in their underlying suit. *See Builders Ass'n of Greater Chicago v. City of Chicago*, No. 96-C-1122, 2002 WL 1008455 at *4 (N.D. Ill. May 13, 2002) (finding that "whether the information sought is relevant to the issues of the lawsuit is part of the analysis of whether the burden is "undue""). Similar to the reasoning in *Patterson*, if the Court here were to order a non-party like TMS to comply with Plaintiffs' subpoena merely based on showing of possible relevance, such a holding could cause TMS to be forced to respond to a host of other subpoenas in the future. This slippery slope is not one the Court intends to traverse down.

- 11 -

Further support lies in the fact that Plaintiffs' subpoena requests the disclosure of confidential business information. Indeed, the subpoena demands information about TMS' revenues and profits, pricing structure, customers, and other proprietary information. *See Davis v. City of Springfield, Ill.*, No. 04-3168, 2009 WL 910204 at *2 (C.D. Ill. Apr. 1, 2009) (stating that pursuant to Rule 45(c)(3)(B), a court may quash a subpoena that requires the disclosure of "a trade secret or other confidential research, development, or commercial information.") While Plaintiffs contend the Court should not consider this significant since there is the protective order in place, the Court finds this fact combined with the Court's finding that the information sought lacks relevance warrants a finding that the burden imposed on TMS is undue.

Thus, after considering the relevant factors under the Seventh Circuit's relative hardship test, the Court finds Plaintiffs' subpoena imposes an undue burden upon TMS. Accordingly, the Court grants TMS's Motion to Quash.

### E. Costs & Fees

In their Motion, TMS also seeks reasonable attorneys' fees and expenses incurred in connection with this Motion. Rule 45(c) allows for costs, including reasonable attorney fees, when a party has faced an undue burden or expense in objecting to a subpoenaing party who failed to take reasonable steps to ensure the subpoena

would not result in an undue burden. FED. R. CIV. P. 45(c)(1). "[G]ood faith in issuing a subpoena is not sufficient to avoid sanctions under Rule 45(c)(1) if a party has issued the subpoena in violation of the duty imposed by that Rule." *Builders Ass'n of Greater Chi.,* 2002 WL 1008455 at *3. The Court "must determine if there has been a breach of counsel's duty to take reasonable steps to avoid imposing an undue burden or expense upon the person subject to the subpoena." *Id.*

The Court finds Plaintiffs' counsel failed to take reasonable steps after meeting and conferring with TMS. *See id.* at *10. After learning TMS was not a licensing intermediary and was not in the business of licensing stand-alone images, Plaintiffs could have withdrawn the subpoena and attempted to subpoena a different organization that possessed the relevant information. This was not, however, the course of action Plaintiffs chose. Instead, Plaintiffs demanded TMS to comply with the subpoena, and caused TMS to file the instant motion in this Court.

The Court finds this conduct violates Rule 45(c). The Court finds this particularly true after Plaintiffs continued to seek TMS' confidential business information after they learned TMS was not in the business of licensing stand-alone images or a licensing intermediary that could shed light on the potential market of Plaintiffs' images. *See Builders Ass'n of Greater Chicago*, 2002 WL 1008455 at *4 (awarding fees and costs to the prevailing party

after the court quashed a subpoena, and finding that a subpoena need not be frivolous or in bad faith to justify an award). As such, the Court grants TMS reasonable costs and fees.

### IV. <u>CONCLUSION</u>

For the reasons stated herein, TMS' Motion to Quash is granted. In connection with this ruling, the Court orders Plaintiffs to pay TMS its reasonable costs and fees associated with this Motion.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Date: 5/6/2013

- 14 -